## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| DERRICK HAMILTON and SUEANNE HAMILTON, | CIVIL ACTION  1:16-cv-06783 |
| Plaintiffs, |  |
| v. | COMPLAINT |
| LENDERLIVE  NETWORK, LLC, DOVENMUEHLE MORTGAGE, INC.,  and EQUIFAX INFORMATION SERVICES, LLC | JURY TRIAL DEMANDED |
| Defendants. |  |

## <u>COMPLAINT</u>

NOW COME the Plaintiffs, Derrick Hamilton ("Derrick") and Sueanne Hamilton ("Sueanne") (collectively, "Plaintiffs"), by and through their attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, Lenderlive Network, LLC ("Lenderlive"), Dovenmuehle Mortgage, Inc. ("Dovenmuehle"), and Equifax Information Services, LLC ("Equifax") (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1.  Plaintiffs bring this action seeking redress for Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq., and Lenderlive's violations of the Fair Debt Collections Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692.

### JURISDICTION AND VENUE

2.  Subject matter jurisdiction is conferred upon this Court by the FCRA pursuant to 15 U.S.C. §1681 et seq. and the FDCPA pursuant to 15 U.S.C. §1692, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

1

3.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiffs reside in this District and all of the events or omissions giving rise to the claims occurred in the Northern District.

### PARTIES

4.   Plaintiffs Derrick and Sueanne are consumers and natural persons over 18-years-of-age who, at all times relevant, owned and resided at the property located at 148 North Bertram Drive, Unit N, Yorkville, Illinois 60560 ("subject property").

5.   Defendant Dovenmuehle is a corporation with its headquarters located at 1 Corporate Drive, Suite 350, Lake Zurich, Illinois 60047. Dovenmuehle is a servicing company that services loans on behalf of commercial banks, savings banks, credit unions, insurance companies, and mortgage banking companies across the country, including in the State of Illinois. Dovenmuehle's Illinois registered agent, William A. Mynatt, Jr., is also located at 1 Corporate Drive, Suite 360, Lake Zurich, Illinois 60047.

6.   Defendant Lenderlive is a foreign limited liability company with its principal office located at 710 South Ash Street, Suite 200, Glendale, Colorado 80246. Lenderlive's Illinois registered agent, Illinois Corporation Service C, is located at 801 Aldlai Stevenson Drive, Springfield, Illinois 62703.

7.   Defendant Equifax is a Delaware limited liability company with its principal place of business at 1550 Peachtree St. NW, Atlanta, Georgia 30309. Equifax is in the business of organizing, assimilating, analyzing and maintaining consumer data files for the purpose of furnishing credit information on more than 600 million consumers to third parties on a nationwide basis, including in the State of Illinois. Equifax generates 158 billion credit score updates per month and 60,000 updates per second for consumers.

BANKRUPTCY CASE

8. In 2007, Plaintiffs executed a Veteran Affairs mortgage and note in the amount of $123,000.00 ("subject debt" or "subject loan") in favor of JP Morgan Chase Bank, N.A., secured by the subject property.

9. In January 2013, Plaintiffs refinanced the subject loan with United Security Financial Corporation ("United Security"). Plaintiffs then received a Notice of Transfer letter informing Plaintiffs that Dovenmuehle has become the servicer of the subject debt and requested Plaintiffs to send their payments to Dovenmuehle.

10. Thereafter, Plaintiffs experienced some financial troubles and were not able to make their payments. Shortly thereafter, Plaintiffs received a Notice of Transfer letter stating that subject debt has been transferred and/or sold to Lenderlive.

11. On January 28, 2015, Plaintiffs filed a joint Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 15-02779 ("bankruptcy").

12. Schedule D of the bankruptcy petition listed the subject debt, a secured pre-petition debt to Lenderlive, in the amount of $122,637.00 secured by subject property. *See* Exhibit A, a true and correct copy of Plaintiffs' Chapter 13 bankruptcy Schedule D filed in Plaintiffs' bankruptcy.

13. Equifax and Dovenmuehle were listed in Plaintiffs' bankruptcy for notice purposes. *Id*.

14. On or about January 31, 2015, by virtue of listing Lenderlive and Dovenmuehle as secured creditors in their bankruptcy petition and Equifax for notice purposes, the Bankruptcy Noticing Center ("BNC") served Defendants with notice of Plaintiffs' bankruptcy filing and Plaintiffs' Original Plan. *See* Exhibit B, a true and correct copy of the BNC Certificate of Notice establishing service of the notice of filing and Original Plan upon Defendants.

3

15. Plaintiffs' Original Plan proposed to treat Lenderlive's claim for the subject property as follows:

> "Debtors are surrendering the real property located at 148 N. Bertram Drive, Unit N, Yorkville, Illinois to LenderLive Network, Inc., in full satisfaction of its claims." *Id.* at p. 5.

16. On March 4, 2015, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No attorney or representative from Lenderlive appeared at the 341 Meeting of Creditors.

17. On March 27, 2015, Plaintiffs' Chapter 13 Plan was confirmed by the Honorable Donald R. Cassling. *See* Exhibit C, a true and correct copy of the Confirmation Order.

18. Plaintiffs fully performed their duties as set forth in their confirmed Chapter 13 Plan.

19. On September 8, 2015, the Bankruptcy Court entered an Order of Discharge in Plaintiffs' case of all dischargeable debts, including the subject loan. *See* Exhibit D, a true and correct copy of the Order of Discharge and BNC Certificate of Notice establishing service of the Order of Discharge upon all Defendants.

20. The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the Debtor … The chapter 13 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged." *Id* at p. 2.

21. On or about September 10, 2015, the BNC served Defendants with the Order of Discharge. *Id*.

22. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject debt by Dovenmuehle, Lenderlive, or any other party or successors.

23. Plaintiffs' personal liability on the subject debt was extinguished via their bankruptcy discharge, thus terminating their business relationship with Dovenmuehle, Lenderlive, or any other party or successors.

CREDIT REPORTING AND DERRICK'S CREDIT DISPUTES TO EQUIFAX

24. On October 15, 2015, after receiving his discharge, Derrick pulled his credit report to make sure all creditors were reporting accurately after receiving his bankruptcy discharge and discovered that Equifax, Lenderlive, and Dovenmuehle were reporting inaccurately on his credit report.

25. The Lenderlive trade line was reporting with a high balance amount, an amount past due, and a monthly payment amount. This is inaccurate and misleading because Lenderlive was included and discharged in his bankruptcy on September 8, 2015. The trade line should be reporting with a zero balance, no past due amount, and no scheduled payment amount.[1]

26. The Dovenmuehle trade line was reporting with a scheduled payment amount. This is inaccurate and misleading because Dovenmuehle was included and discharged in his bankruptcy on September 8, 2015. The trade line should be reporting with a zero scheduled payment amount.

**a. Derrick's First Dispute to Equifax[2]**

27. On February 16, 2016, Derrick sent a written dispute to Equifax, requesting that his credit report be updated to reflect a zero balance and the discharged status of all accounts included in his bankruptcy. Derrick attached all relevant bankruptcy information to his dispute. *See* Exhibit E, true and correct copies of Derrick's first dispute to Equifax.

28. Among other items, Derrick's first dispute letter stated the following:

---

[1] To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA"), in cooperation with the Credit Reporting Agencies, publishes a Credit Reporting Resource Guide for reporting data called the "Metro 2 Format."

[2] Derrick also sent a dispute letter to Transunion and Experian requesting that his credit file be updated to reflect a zero balance and the discharged status of all of the accounts included in his bankruptcy.

a. "I have some several errors on my credit report: (2) LenderLive Network, Inc. account #267505**** & Acc# ****8313. Chase MTG account #908062987****. Dovenmuehle Mortgage acct #310001896 & Vantagewest Credit Union;"

b. "I am enclosing a copy of my discharge order entered on 9/08/2015 in my Chapter 13 case along with my chapter 13 Plan and schedules;"

c. "Please take the necessary steps to correct these account in my credit report;" and

d. "You are required to report a current balance of "0", past due amount of "0", monthly payment of "0," an accurate account history, and an accurate payment history in respect of my automatic stay as well as after my bankruptcy discharge on all accounts included in my bankruptcy case." *Id.*

29. Derrick sent his dispute to Equifax via certified mail, return-receipt requested. *Id.*

30. Upon information and belief, Lenderlive and Dovenmuehle received notice of Derrick's first dispute and all relevant information from Equifax within five days of Equifax receiving Derrick's first dispute. *See* 15 U.S. Code §1681i(a)(2).

**b. Equifax's Response to Derrick's First Dispute[3]**

31. On March 5, 2016, Equifax responded to Derrick's first dispute by correcting some of the accounts included in his bankruptcy, but not the Lenderlive account. Equifax's response stated that the Lenderlive trade line was updated to show included in bankruptcy.

32. Despite Equifax's representation that Derrick's credit report had been updated to reflect his bankruptcy, Equifax and Lenderlive continued to report the subject loan with a "Balance Amount" of $122,638.00, an "Amount Past Due" of $22,540.00, and a "Scheduled Payment Amount" of $902.00.[4]

33. The reporting of the Lenderlive trade line was still inaccurate and misleading because Derrick was no longer liable for the subject debt. Reporting a balance amount, an amount past

---

[3] Experian and Transunion responded to Derrick's first dispute and updated all of the accounts included in his bankruptcy to comply with the FCRA requirements. Each account reported a $0 balance, a $0 past due amount, a $0 scheduled payment amount, and updated to a status of account included in bankruptcy.

[4] Pursuant to the CDIA guidelines, a Chapter 13 bankruptcy, once completed and discharged, should be reported as "Discharged through BK Chapter 13." An "Account Status" of the status at time of petition, a "Current Balance" of Zero, a "Scheduled Monthly Payment Amount" of Zero, and a "Amount Past Due" of Zero.

due, and a scheduled payment amount implies that Derrick is delinquent and is still liable for the subject loan.

34. Despite Equifax's representation that Derrick's credit report had been updated to reflect his bankruptcy, Equifax and Dovenmuehle reported the Dovenmuehle trade line with a "Scheduled Payment Amount" of $876.00.

35. The reporting of the Dovenmuehle trade line is still inaccurate and misleading because Derrick is no longer liable to Dovenmuehle for a scheduled payment amount because the debt was discharged in his bankruptcy. Reporting a scheduled payment amount implies that Derrick is still liable for a monthly scheduled payment amount when he is not.

**c. Derrick's Second Dispute to Equifax**

36. On March 18, 2016, Derrick sent a second written dispute to Equifax requesting Equifax to look into the errors on his credit report and attached all relevant information to his second dispute. *See* Exhibit F, a true and correct copy of Derrick's second dispute to Equifax.

37. Among other things, Derrick's second dispute stated the following:

   a. "Ch. 13 Case No. 15-02779;"
   b. "Filing: 01/28/2015, Discharge Date: 09/08/2015;"
   c. "Hello, my name is Derrick Hamilton;"
   d. "I have errors on my credit report, the balance, the past due amount and the scheduled payment amounts are not correct with: LenderLive Network, Inc. account #267505****;" and
   e. "If you could please look into this. I am including a copy of my driver license and a copy of my social security cards." *Id.*

38. Derrick sent his second dispute to Equifax via certified mail, return-receipt requested. *Id.*

39. Upon information and belief, Lenderlive received notice of Derrick's second dispute and all relevant information from Equifax within five days of Equifax receiving Derrick's second dispute. *See* 15 U.S. Code §1681i(a)(2).

7

### d. Equifax's response to Derrick's second dispute

40. On April 9, 2016, Equifax responded to Derrick's second dispute by stating that Lenderlive account is currently not reporting on his Equifax credit report. No further information was provided with Equifax's reinvestigation report.

41. On April 28, 2016, Derrick obtained a three credit bureau report from Equifax to verify that the Lenderlive account is not reporting on his credit file.

42. Despite Equifax's representation that the Lenderlive account was not reporting on his Equifax credit report, Derrick found that Equifax still reported the Lenderlive trade line with a "Balance Amount" of $122,638, an "Amount Past Due" of $22,540, and a "Monthly Payment Amount" of $902.00.[5]

43. Furthermore, Dovenmuehle still inaccurately reported a "Scheduled Payment Amount" of $876.00.

44. The reporting of the Lenderlive trade line was still inaccurate and misleading because Derrick was no longer liable for the subject loan. Reporting a balance amount, an amount past due, and a scheduled payment amount implies that Derrick is delinquent and is still liable for the subject loan.

45. Additionally, the reporting of the Dovenmuehle trade line was still inaccurate and misleading because Derrick was no longer liable for a scheduled payment amount. Reporting a scheduled payment amount implies that Derrick is still liable for a high monthly payment amount, when he is not.

---

[5] It should be noted that Transunion and Experian updated the Lenderlive account to comply with FCRA requirements for accounts discharged in bankruptcy.

CREDIT REPORTING AND SUEANNE'S CREDIT DISPUTES

46. On January 20, 2016, after receiving her discharge, Sueanne pulled her credit report to ensure that all her creditors were reporting accurately after receiving her bankruptcy discharge and discovered that Equifax, Lenderlive, and Dovenmuehle were reporting inaccurately on her credit report.

47. The Lenderlive trade line was reporting with a balance amount, an amount past due, and a monthly payment amount. This is inaccurate and misleading because Sueanne was discharged in bankruptcy on September 8, 2015, and the trade line should be reporting with a zero balance, no past due amount, no scheduled payment amount, and without any other negative or derogatory status.

48. The Dovenmuehle trade line was reporting with a scheduled payment amount. This is inaccurate and misleading because Sueanne was discharged in bankruptcy on September 8, 2015 and the trade line should be reporting with a zero scheduled payment amount.

**a.  Sueanne's First Dispute to Equifax[6]**

49. On February 16, 2016, Sueanne sent a written dispute to Equifax, requesting that her credit report be updated to reflect a zero dollar balance and a discharged status for all accounts discharged in her bankruptcy. Sueanne attached all relevant bankruptcy information to her dispute. *See* Exhibit G, a true and correct copy of Sueanne's first dispute to Equifax.

50. Among other things, Sueanne's first dispute letter stated the following:

   a.  "I have some several errors on my credit report: (2) LenderLive Network, Inc. account # 267505**** & Acc# ****8313. Chase MTG account #908062987****. Dovenmuehle Mortgage acct #310001896 & Vantagewest Credit Union;"
   b.  "I am enclosing a copy of my discharge order entered on 9/08/2015 in my Chapter 13 case along with my chapter 13 Plan and schedules;"

---

[6] Sueanne also sent a dispute to Transunion and Experian requesting her credit file to be updated to reflect a zero balance and the discharged status of all of the accounts included in her bankruptcy.

c.  "Please take the necessary steps to correct these account in my credit report;" and

d. "You are required to report a current balance of "0", past due amount of "0", monthly payment of "0," an accurate account history, and an accurate payment history in respect of my automatic stay as well as after my bankruptcy discharge on all accounts included in my bankruptcy case." *Id.*

51. Sueanne sent her dispute to Equifax via certified mail, return-receipt requested. *Id.*

52. Upon information and belief, Lenderlive and Dovenmuehle received notice of Sueanne's first dispute and all relevant  information from Equifax within five days of Equifax receiving Sueanne's first dispute. *See* 15 U.S. Code §1681i(a)(2).

**b.  Equifax's Response to Sueanne's First Dispute**

53. On March 5, 2016, Equifax responded to Sueanne's first dispute by updating some of the accounts included in her bankruptcy, but not the Lenderlive account. Equifax's response stated that the Lenderlive trade line was reporting as included in bankruptcy.

54. Despite Equifax's representation that Sueanne's credit report had been updated, Equifax and Lenderlive reported the trade line with a "Balance Amount" of $114,764.00, an "Amount Past Due" of $21,631.00, and a "Scheduled Payment Amount" of $865.00.[7]

55. The reporting of the Lenderlive trade line was still inaccurate and misleading because Sueanne was no longer liable for the subject loan. Reporting a balance amount, an amount past due, and a scheduled payment amount implies that Sueanne is delinquent and is still liable for the subject loan.

56. Despite Equifax's representation that Sueanne's credit report had been updated, Equifax and Dovenmuehle reported the Dovenmuehle trade line with a "Scheduled Payment Amount" of $840.00.

---

[7] It should be noted that Transunion and Experian updated the Lenderlive trade line to comply with FCRA requirements for accounts discharged in bankruptcy.

57. The reporting of the Dovenmuehle trade line was still inaccurate and misleading because Sueanne was no longer liable for a schedule payment amount as the debt was included and discharged in her bankruptcy. Reporting a scheduled payment amount implies that Sueanne is under an obligation to make a monthly payment to Dovenmuehle when she is not.

### c. Sueanne's Second Dispute to Equifax

58. On March 18, 2016, Sueanne sent a second written dispute letter to Equifax requesting it to look into the errors on her credit report and attached all relevant information to her second dispute. *See* Exhibit H, a true and correct copy of Sueanne's second dispute to Equifax.

59. Among other things, Sueanne's second dispute stated the following:

a. "Ch. 13 Case No. 15-02779;"
b. "Filing: 01/28/2015, Discharge Date: 09/08/2015;"
c. "I have errors on my credit report, the balance, the past due amount and the scheduled payment amount are not correct with: LenderLive Network, Inc. account #267505****;" and
d. "If you could please look into this. I am including a copy of my driver license and a copy of my social security cards;" *Id.*

60. Sueanne sent her second dispute to Equifax via certified mail, return-receipt requested. *Id.*

61. Upon information and belief, Lenderlive received notice of Sueanne's second dispute and all relevant information from Equifax within five days of Equifax receiving Sueanne's second dispute. *See* 15 U.S. Code §1681i(a)(2).

62. On April 29, 2016, Sueanne obtained a three credit bureau report to determine whether the inaccuracies still existed on her credit report because she failed to receive her reinvestigation report from Equifax. Sueanne found that Equifax and Lenderlive were still reporting the Lenderlive trade line with a "Balance Amount" of $114,764.00, a "Past Due Amount" of $21,631.00, and a "Monthly Payment Amount" of $865.00.

63. The reporting of the Lenderlive trade line was still inaccurate and misleading because Sueanne was no longer liable for the subject loan. Reporting a balance amount, an amount past due, and a scheduled payment amount implies that Sueanne is delinquent and is still liable for the subject loan.

64. On the same three credit bureau report, Sueanne found that Equifax and Dovenmuehle still reported the Dovenmuehle trade line with an $840.00 "Monthly Payment Amount."

65. The reporting of the Dovenmuehle trade line with a monthly payment amount is inaccurate and misleading because the debt was discharged in bankruptcy and Sueanne is no longer liable for a monthly payment amount.

### d. Equifax's Response to Sueanne's Second Dispute

66. On May 2, 2016, Equifax finally responded to Sueanne's second dispute by stating that it had updated the tradeline. Despite its representation that Equifax updated the Lenderlive account, Equifax reported the Lenderlive trade line with a "Scheduled Payment Amount" of $865.00 on her Equifax credit report.

67. The reporting of the Lenderlive tradeline with a scheduled payment amount is still inaccurate and misleading because Sueanne is not liable for a scheduled payment amount because the subject debt was discharged in bankruptcy.

### IMPACT OF THE CONTINUING INACCURATE REPORTING ON PLAINTIFFS' CREDIT FILES

68. As of today, the inaccurate reporting of Equifax, Lenderlive, and Dovenmuehle on Plaintiffs' credit reports continues to paint a false and damaging image of Plaintiffs. Equifax, Lenderlive, and Dovenmuehle have yet to update their reporting to accurately reflect the discharged status of each debt.

69. The inaccurate reporting of each account continues to have a significant adverse effect on Plaintiffs' credit rating and their ability to obtain financing because it creates a false impression that the Lenderlive and Dovenmuehle accounts are due and owing, rendering Plaintiffs as high risk consumers.

70. The entire experience has imposed upon Plaintiffs significant suspicion, frustration, distress, and has rendered Plaintiffs helpless as to their ability to regain a firm foothold on their creditworthiness, credit standing, and credit capacity.

71. As a result of Equifax's, Lenderlive's, and Dovenmuehle's conduct, actions, and inactions, Plaintiffs have suffered actual damages as set forth herein, including specifically a significant impact on their credit worthiness, their credit ability, out-of-pocket expenses, the loss of credit capacity, the loss of ability to purchase and benefit from a credit line, certified mail expenses, anxiety, and further frustration and aggravation associated with writing dispute letters, time and money expended meeting with attorneys, tracking the status of disputes, monitoring their credit files, and mental and emotional pain and suffering.

72. Due to the conduct of Defendants, Plaintiffs were forced to retain counsel.

## COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (AGAINST LENDERLIVE)

73. Plaintiffs restates and realleges paragraphs 1 through 72 as though fully set forth herein.

74. Plaintiffs are a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

75. Lenderlive is a "person" as defined by 15 U.S.C. §1681a(b).

76. Lenderlive is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

77. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d).

78.     Lenderlive violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving several requests for an investigation from Equifax and Plaintiffs.

79.     Lenderlive violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax and Plaintiffs.

80.     Had Lenderlive reviewed the information provided by Equifax and Plaintiffs, it would have corrected the inaccurate designation of the subject loan, transmitting the correct information to Equifax. Instead, Lenderlive wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

81.     Lenderlive violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiffs' credit files.

82.     Lenderlive violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiffs' disputes with Equifax.

83.     Lenderlive violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Equifax after being put on notice and discovering inaccurate reporting with respect to the subject loan.

84.     Lenderlive failed to conduct a reasonable reinvestigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiffs' credit files within 30 days of receiving notice of a dispute from Equifax under 15 U.S.C. §1681i(a)(1).

85.     Despite the blatantly obvious errors on Plaintiffs' credit files, and Plaintiffs' efforts to correct the errors, Lenderlive did not correct the errors or trade line to report accurately. Instead, Lenderlive wrongfully reinserted, furnished and re-furnished false and erroneous information

that the subject loan was delinquent by willfully re-reporting the inaccurate trade line after Plaintiffs' disputes.

86.    A reasonable investigation by Lenderlive would have confirmed the veracity of Plaintiffs' disputes, yet the inaccurate information continues to be reported on Plaintiffs' credit files.

87.    Had Lenderlive taken steps to investigate Plaintiffs' valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting. Plaintiffs provided all relevant information in their requests for investigation. Furthermore, Plaintiffs' bankruptcy information is public record that is widely available and easily accessible.

88.    By deviating from the standards established by the mortgage servicing industry and the FCRA, Lenderlive acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

WHEREFORE Plaintiffs, DERRICK HAMILTON and SUEANNE HAMILTON, request that this Honorable Court:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  Order the deletion or modification of all adverse credit reporting relating to the subject loan;

c.  Award Plaintiffs actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d.  Award Plaintiffs statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiffs punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f.  Award Plaintiffs costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (AGAINST DOVENMUEHLE)

89. Plaintiffs restates and realleges paragraphs 1 through 72 as though fully set forth herein.

90. Plaintiffs are a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

91. Dovenmuehle is a "person" as defined by 15 U.S.C. §1681a(b).

92. Dovenmuehle is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

93. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d).

94. Dovenmuehle violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving several requests for an investigation from Plaintiffs and Equifax.

95. Dovenmuehle violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax and Plaintiffs.

96. Had Dovenmuehle reviewed the information provided by Equifax and Plaintiffs, it would have corrected the inaccurate designation of the debt, transmitting the correct information to Equifax. Instead, Dovenmuehle wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

97. Dovenmuehle violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiffs' credit files.

98. Dovenmuehle violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiffs' disputes with Equifax.

99. Dovenmuehle violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Equifax after being put on notice and discovering inaccurate reporting with respect to the trade line.

100. Dovenmuehle failed to conduct a reasonable reinvestigation of its reporting of the debt, record that the information was disputed, or delete the inaccurate reporting from Plaintiffs' credit file within 30 days of receiving notice of a dispute from Equifax under 15 U.S.C. §1681i(a)(1).

101. Despite the blatantly obvious errors on Plaintiffs' credit files, and Plaintiffs' efforts to correct the errors, Dovenmuehle did not correct the errors or trade line to report accurately. Instead, Dovenmuehle wrongfully reinserted, furnished and re-furnished false and erroneous information that a debt included in bankruptcy was delinquent by willfully re-reporting the inaccurate trade line after Plaintiffs' disputes.

102. A reasonable investigation by Dovenmuehle would have confirmed the veracity of Plaintiffs' disputes, yet the inaccurate information continues to be reported on Plaintiffs' credit files.

103. Had Dovenmuehle taken steps to investigate Plaintiffs' valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting. Plaintiffs provided all relevant information in their requests for investigation. Furthermore, Plaintiffs' bankruptcy information is public record that is widely available and easily accessible.

104. By deviating from the standards established by the mortgage servicing industry and the FCRA, Dovenmuehle acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

WHEREFORE Plaintiffs, DERRICK HAMILTON and SUEANNE HAMILTON, request that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;

c. Award Plaintiffs actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiffs statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiffs punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f. Award Plaintiffs costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EQUIFAX)

105. Plaintiffs restate and reallege paragraphs 1 through 72 as though fully set forth herein.

106. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

107. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

108. Plaintiffs provided Equifax with all relevant information and documentation in their requests for an investigation and reinvestigation to reflect their bankruptcy discharge and that they are no longer liable for debts included in their bankruptcy.

109. Equifax prepared Plaintiffs' credit reports containing inaccurate information by reporting the subject loan with an amount past due, an owed balance, and a monthly payment

amount, when in fact Plaintiffs had received a bankruptcy discharge, owed no past due amounts, no balances, and no scheduled payment amount on the subject loan.

110. A simple review of the documents submitted by Plaintiffs would have confirmed that Plaintiffs had filed bankruptcy, no longer owed a balance, no longer had an amount past due, and did not have a scheduled payment amount.

111. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished regarding Plaintiffs.

112. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information on Plaintiffs' credit files.

113. Had Equifax taken *any* steps to investigate Plaintiff's valid disputes, it would have determined that subject loan and other debts were discharged in bankruptcy.

114. Instead, Plaintiffs each had to pull a three credit bureau report to ensure that all debts included in their bankruptcy were reporting accurately and found that Equifax willfully continued to report the inaccurate information.

115. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiffs' disputes to Lenderlive and Dovenmuehle. Upon information and belief, Equifax also failed to include all relevant information as part of the notice to Lenderlive and Dovenmuehle regarding Plaintiffs' disputes that Equifax received from the Plaintiffs.[8]

116. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiffs and Lenderlive with regard to the subject debt.

---

[8] As part of Plaintiffs' disputes, Plaintiffs included a copy of their Discharge Order, Petition Schedule D, their Chapter 13 Plan, a copy of their Driver's License, and Social Security Card.

117. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiffs' disputes.

118. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Lenderlive or Dovenmuehle that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiffs. The lack of notice and correction caused Plaintiff to pull their credit file multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiffs' credit worthiness and credit ability.

119. Since *all* of Plaintiffs' other accounts were reported as "$0 balance owed," "included in bankruptcy," or "discharged," Equifax should have investigated why the Lenderlive and Dovenmuehle trade line were reporting anything other than a $0 past due amount, $0 balance amount, or $0 scheduled payment amount.

120. Moreover, after Plaintiffs' written disputes, Equifax had specific information related to Plaintiffs' bankruptcy case and discharge order, which included the subject loan.

121. Equifax knew that the inaccurate designation of the subject loan on Plaintiffs' credit file under the Lenderlive and Dovenmuehle trade line as delinquent, in default, and with a high balance owed after their bankruptcy discharge would have a significant adverse affect on Plaintiffs' credit worthiness and ability to receive a "fresh start" after bankruptcy.

122. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

123. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with a reckless disregard for their duties to report accurate and complete consumer credit information.

124. It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

125. Equifax's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiffs' credit files and reporting their credit information.

126. Equifax acted reprehensively and carelessly by reporting and re-reporting Plaintiffs as continually delinquent, in default, and owing a high past due balance on the subject accounts after Plaintiffs were discharged in bankruptcy.

127. As a result of the conduct, actions, and inaction of Equifax, Plaintiffs have suffered various types of damages as set forth herein, including specifically, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with their attorneys, tracking the status of their disputes, monitoring their credit file, and mental and emotional pain and suffering.

128. Equifax's conduct was willful, rendering it liable for punitive damages pursuant to 15 U.S.C. §1681n.

129. Despite actual and implied knowledge that Plaintiffs' credit files were erroneous, Equifax readily sold Plaintiffs' inaccurate and misleading reports to one or more third parties, thereby misrepresenting Plaintiffs and, ultimately, Plaintiffs' creditworthiness.

WHEREFORE Plaintiffs, DERRICK HAMILTON and SUEANNE HAMILTON, request that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion of all adverse credit reporting;

c. Award Plaintiffs actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award each Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiffs punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiffs costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT IV – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST LENDERLIVE)

130. Plaintiffs restate and reallege paragraphs 1 through 72 as though fully set forth herein.

131. Plaintiffs are each a "consumer" as defined by FDCPA § 1692a(3).

132. The subject debt qualifies as a "debt" as defined by FDCPA § 1692a(5) as it arises out of a transaction for personal, family, or household purposes.

133. Lenderlive qualifies as a "debt collector" as defined by § 1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

134. Lenderlive qualifies as a "debt collector" because it acquired rights to the subject loan after it was in default. 15 U.S.C. §1692a(6).

### a. Violation of FDCPA § 1692e(8).

135. Lenderlive violated §1692e(8) by communicating false credit information on Derrick's Equifax credit file that it knew, or should have known, to be wrong by falsely reporting an account balance on the subject loan, an amount past due, an obligation to make a monthly payment, and that Derrick was delinquent. This information was false because the subject debt

was discharged in bankruptcy. Therefore, Derrick had no further obligations to Lenderlive upon entry of the discharge order.

136.  Lenderlive violated §1692e(8) by communicating false credit information on Sueanne's Equifax credit file that it knew, or should have known, to be wrong by falsely reporting an account balance on the subject loan, an amount past due, an obligation to make a monthly payment, and that Sueanne was delinquent. This information was false because the subject debt was discharged in bankruptcy. Therefore, Sueanne had no further obligations to Lenderlive upon entry of  the discharge order.

137.  15 U.S.C. §1692e(8) also requires a debt collector to disclose the fact that a debt is disputed.

138.  Lenderlive violated §1692e(8) when it failed to designate its trade line as disputed.

139.  Lenderlive knew the subject debt was disputed because it received notice of Plaintiff's dispute from Equifax.

WHEREFORE Plaintiffs, DERRICK HAMILTON and SUEANNE HAMILTON, request that this Honorable Court:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  Award the Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c.  Award the Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1692k; and

d.  Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiffs demand trial by jury.**

Dated: June 28, 2016            Respectfully Submitted,

/s/ Majdi Y. Hijazin, *Of Counsel*

Majdi Y. Hijazin, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630) 575-8181
Fax: (630) 575-8188
mhijazin@hijazinlaw.com